# Exhibit 1

## DECLARATION OF MICHAEL CRUSE

I, Michael Cruse, declare the following facts are true to the best of my knowledge, information and belief.

1.      My name is Michael Cruse.  I am a police officer employed by the City of Topeka.

2.      On September 28, 2017, I was working as a Topeka police officer in uniform when I was dispatched to Ripley Park in Topeka, Kansas to respond to a call that several gunshots had been fired in the area of the park.

3.      I was familiar with the area having a high number of reports of gunshots, that the area was a high crime area and that it was known as a location at which gangs congregated.

4.      I drove a Topeka police SUV which was marked as a Topeka police vehicle to the park.

5.      I arrived and, because of the dangerous nature of the call, waited near the northwest corner of the park for another officer.  While waiting, I observed only two individuals in the park, a male and a female.

6.      As Officer Justin Mackey was arriving, I began to drive on the grass in the park toward the two individuals so that I had the option of the using the SUV as cover because the call involved reported gunshots.  As I approached, the two individuals separated and began to walk in different directions, which I considered to be an attempt to divide the officers or elude us.  I used the public address system in the patrol vehicle to address the individuals to order them to stop walking away but both ignored the order and continued to walk in separate directions.

7.      I contacted the female from the SUV and asked what was going on and why the male was disregarding the order to stop.  The female told me that she and the male had just had

{T0459034}                                             1

an argument but she did not appear to me to be upset, which based upon my experience in calls

involving domestic disputes, was unusual.  I observed no bulges on the female that would

indicate she carried a weapon, nor any movements that would suggest she was attempting to

conceal a weapon.

8.      I notified Officer Mackey by radio to contact the male who was ignoring my

orders to stop.  After a very short time, I left the female and drove to the location at which

Officer Mackey was contacting the male.

9.      I was wearing an Axon camera issued by the Topeka police department.  When

activated the camera records the previous 30 seconds of video but the audio only begins when

the camera is activated so the first 30 seconds of video is without audio.  I activated the camera

as I exited the patrol vehicle to contact the male, whom I did not know but who was later

identified as Dominique White.

10.     I have reviewed the video from the camera which I wore and which was recording

throughout my contact with Dominique White. The video accurately depicts the events from the

perspective of that camera which was mounted on my right shoulder.

11.     Mr. White appeared to be out of breath even though he had not been running.  As

I exited the patrol vehicle to talk with Mr. White, he first put his hands over his head but then

bent over at the waist, resting his arms on his knees or upper legs.  I wondered if Mr. White was

the person who had fired the gunshots or if he needed medical help.  As I approached Mr. White,

I told him that we were only there because we were checking out a gunshots call.  I told him that

I had a responsibility and he acknowledged that he understood that.  He told Officer Mackey and

me that he had heard the gunshots coming from about three blocks to the West.

12.     I started to leave but because of Mr. White's demeanor, I asked him is he was

going to be okay or if he "needed an ambulance or anything like that." He commented that we

had scared him. I asked why we scared him and then asked, "You ain't got no guns or anything

like that on you, right?" He denied having any guns.

13.     Mr. White stated that he had heard gunshots to the West. I asked Mr. White why

he was ignoring me. He responded something about an argument with his girl. I told Mr. White

that I had nothing to do with him and his "chick" but had everything to do with their safety and

the community's safety.

14.     While I was talking with Mr. White, Officer Mackey had moved around behind

him and motioned to bring to my attention a bulge at the back of Mr. White's waistband, under

his shirt, a common location for concealment of a weapon. I asked Mr. White what he had in his

back. He reached around toward the bulge. Concerned that he was reaching for a gun, I drew

my gun to a low ready position but not pointed at Mr. White and told him not to reach for

anything and asked him to "do me a favor and keep your hands straight out." He complied and,

at my direction, pulled his shirt up by gathering it up from his shoulders so his hands were not

near the bulge. The bulge was not a weapon and I holstered my gun.

15.     Mr. White had never faced me, always keeping his right side bladed toward me so

that I could not see his left side. Officer Mackey had moved on around to a location where he

could see Mr. White's left side. As Officer Mackey moved around to the left side, Mr. White

stood up abruptly from the bent over position, which concerned me as an attempt to conceal a

weapon. Officer Mackey then alerted me audibly, "He has a gun in his pocket."

16.     I grabbed Mr. White's right hand and wrist in an effort to control him because of

the gun, intending to take Mr. White to the ground for safety because of the gun. White's arm

was wet and slippery. He pulled me toward him and then broke free from my grasp. Officer Mackey was on the other side and White also broke free from Officer Mackey.

17.     Immediately after Mr. White broke free and began to move away, his left hand went down toward his left pants pocket. I had not seen the gun but Officer Mackey had alerted me to the gun in the pants pocket. It appeared that Mr. White was attempting to pull the gun and fire. Knowing that action is faster than reaction, I fired what I thought was three shots to protect Officer Mackey and myself from the deadly threat. Mr. White was running toward a residential area and I was also concerned with the threat to bystanders in the area.

18.     Mr. White went to his knees and then to the ground on his stomach. While Officer Mackey continued to cover Mr. White, I returned to the patrol vehicle, retrieved medical supplies and then returned to begin first aid in an effort to stop bleeding. I had radioed to request emergency medical service in less than a minute after the shots were fired.

19.     While rendering first aid, I removed a black automatic handgun with a loaded magazine in it and a separate magazine from Mr. White's left pants pocket, which I handed to Officer Mackey.

20.     After other officers responded and took over first aid, I was directed to leave the scene.

21.     Because Dominique White was found in Ripley Park with a handgun, and no one else was found in the park besides the female with him, it appeared that White was probably the person who had fired the gun resulting in the 911 call that reported shots fired in Ripley Park.

22.     As Dominique White ran from us with the gun, he was running generally toward a residential area, including the Timberlee Apartments, a residential apartment building and a location where he could find cover from which he could have fired his gun at us or others. No

location was close to us to which we could move to find cover from gunfire from Dominique White.

23.     I shot at Dominique White because he was armed with a handgun and because it appeared that he intended to draw the handgun with the intent to shoot Officer Mackey and me and because of the threat he presented to others in the area.

24.     The video from the Axon camera I wore shows Mr. White's left had reaching toward his pocket at approximately 0:01:57 on the video counter.  Two still images captured from the video at that location are attached as Exhibits A and B.

25.     A complete copy of the Axon video from the camera I wore is being presented with a motion to file evidence conventionally.

The foregoing information is based upon my personal knowledge.  I declare under the penalty of perjury that the foregoing is true and correct.

Executed this 28th day of December, 2018.

_____        12/28/2018
MICHAEL CRUSE





EXHIBIT

B