# Exhibit 2

## DECLARATION OF JUSTIN MACKEY

I, Justin Mackey, declare the following facts are true to the best of my knowledge, information and belief.

1. My name is Justin Mackey. I am a police officer employed by the City of Topeka.

2. On September 28, 2017 at approximately 9:10 a.m., I was dispatched to Ripley Park in Topeka, Kansas to respond to a call that gunshots had been fired in the area of the park.

3. I was in uniform and driving a marked patrol vehicle.

4. I was familiar with the area having a high number of reports of gunshots, that the area was a high crime area and that it was known as a location at which gangs congregated.

5. Attached as Exhibit A is the report I prepared detailing the incident that resulted when I responded to that call. The information in the report is true and correct.

6. I have reviewed the video from the camera which I wore and which was recording throughout my contact with Dominique White. The video accurately depicts the events from the perspective of that camera which was mounted on glasses worn on my head.

7. When I announced the gun I saw in Mr. White's left front pants pocket, I ordered him to lay on the ground and when he attempted to pull away, I ordered him to stop.

8. Attached as Exhibits B and C are still images taken from the Axon video from the camera I wore showing Mr. White reaching for his gun.

9. I shot at Dominique White because he was armed with a handgun, and while he was running he looked over his shoulder at me and placed his left hand on his left front shorts pocket where I had observed the handgun and magazine.

10. Because of White's actions, I believed that he was attempting to draw the handgun with the intent to shoot Officer Cruse and me.

11. Because Dominique White was found in Ripley Park with a handgun, and no one else was found in the park besides the female with him, White appeared to probably be the person who had fired the gun resulting in the 911 call that reported shots fired in Ripley Park.

12. As Dominique White ran from us with the gun, he was running generally toward a residential area, including a residential apartment building and a location where he could find cover from which he could have fired his gun at us or others. No location was close to us to which we could move to find cover to protect from gunfire from Dominique White.

13. A complete copy of the Axon video from the camera I wore is being presented with a motion to file evidence conventionally.

The foregoing information is based upon my personal knowledge. I declare under the penalty of perjury that the foregoing is true and correct.

Executed this 28th day of December, 2018.

_____  12/28/2018
JUSTIN MACKEY

{T0459033}                                    2

L17072183 Report 32 / Lead 30

On 9/28/2017, I Officer J. Mackey #100 was on duty with the Topeka Police Department ("TPD") working as unit 436A within the City of Topeka, Kansas. I was wearing a TPD approved uniform and operating a fully marked black and white TPD SUV. I was also equipped with a TPD issued AXON camera. At approximately 0910 hours I was dispatched to the area of the 300 block of SE Lawrence in reference to a report of gun shots in the area.

The caller who refused to have contact with TPD advised dispatch that they heard gun shots and that they possibly came from Ripley Park. Ripley Park is located at 300 SE Lawrence.

It should be noted that I was in the area of 45th and Grand Oaks when I received the call. Due to the nature of the call, I advised dispatch "10/04", meaning "send a back officer." TPD Officer Cruse who was working as unit 414A, was dispatched as by back.

Officer Cruse arrived in the area first. Officer Cruse advised over the radio that he was at the intersection of 2nd and Lime facing the park. Officer Cruse also advised he could see two individuals in the park sitting at a picnic bench. I acknowledged Officer Cruse over the radio that I had heard his radio traffic by saying "10/4." I also informed Officer Cruse that I was at 6th and Branner.

It should be noted that after getting the call for service, I traveled east on 45th street till Adams. I then turned north onto Adams. It should also be noted that Adams turns into SE Branner. I came into the area of the call by continuing north till 4th. I then turned east till Lime Street. Then north on Lime to 2nd street. Once at 2nd and Lime, I did not see Officer Cruse. I assumed that Officer Cruse went ahead to Ripley Park. I took a right onto SE 2nd and continued to the entrance of Ripley Park.

As I entered Ripley Park, I noticed that Officer Cruse had driven over the curb in his fully marked Topeka Police SUV and was now driving in the grass towards a unknown male and female who were now walking west towards a tree line. I then observed the two individuals turn their heads and look over their shoulders towards Officer Cruse. I then observed the female stop near Officer Cruse's patrol car, the male who was wearing a grey shirt and dark color shorts kept walking to the west. While the male was walking away, the male kept looking over his shoulder towards Officer Cruse and the female.

After making the foregoing observations, I drove over the curb and into the grass traveling in the same direction towards the male who was still walking. I activated my TPD issued Axon camera. Officer Cruse stated, "He's ignoring me, you want to stop him?" over the radio. I then advised "10/4" meaning "yes" and drove directly towards the male. Once behind the male I used the PA system and stated, "Hold up, I need to ask you a question." The male looked at me over his shoulder and continued walking away. Using the PA system again I stated, "Hey man, I need to ask you a really fast question." The male finally stopped near the curb of 3rd and Lawrence. I did not know the male from any previous encounters nor from any information I had received from dispatch while getting the call for service.

I stepped out of my patrol car and observed that Officer Cruse had left the female and had driven to my location just to my right. Officer Cruse exited his patrol car and attempted to initiated a dialogue with the male subject. Officer Cruse asked him, the male, why he did not stopped when instructed to do so. The male advised that he and his girlfriend had just gotten into a verbal argument and everything was okay. Officer Cruse advised him what we were not stopping him due to the verbal argument. Officer Cruse further advised that we were in the park investigating a report of gun shots in area. The male advised that he had heard gunshots. I asked the male where he had heard them. The male advised to the west by three blocks.

EXHIBIT A

*L1707 2183 Report 32/Lead 30*

During this exchange of dialogue between Officer Cruse and the male, I noticed the male appeared to be out breath. I believed this to be odd based on the earlier observations that I saw and the clarity the male was speaking to us. The male shifted his stance from standing in a straight up and down position with his hands around his waist line to being bent over at the waist with his elbows on his thighs.

At this time I was standing just off the male's right shoulder and Officer Cruse was standing just to the right of him. I looked towards the west where the male advised he had heard the gunshots to see if anyone was coming towards us from that area. I then began walking behind the male and noticed a flat spot near the back of his waistband, underneath his shirt. I was concerned that the male might possibly be armed. I pointed to the area of concern to Officer Cruse by drawing a straight line in the air with my hand. I then pointed towards the area of concern. Officer Cruse acknowledged my concern and asked the male if had any weapons on his person. The male who was still bent over at the waist, quickly lifted his shirt up without any directions from Officer Cruse or myself. Once the shirt was lifted up to the males shoulders, I noticed that he was wearing two shirts, had on a second pair of grey shorts under his outer pair, and was wearing a brown belt. I did not observe any type of weapons at this time. What I initially thought was a weapon was likely a bulge created by the male's belt.

I continued to walk to my left behind the male in an ongoing effort to determine whether the male had any weapons on his person. The male remained bent over at the waist. Once I was directly behind the male, I noticed a black semi-automatic handgun in the left front pocket of the male's shorts. I also observed a loaded magazine in the same pocket with the firearm. At that point, the male suddenly went from a bent over position to a straight up and down position. The male also quickly looked down at this left front pocket were I had observed the firearm. The male stated, "Please don't touch me, I can't." During this time, I took a step to get closer to the male. I announced to Officer Cruse that the male had a gun in his pocket. The male then dropped his left hand towards his left front pocket.

Due to my observations of the male's erratic behavior, his unwillingness to follow commands, his furtive hand movements and the presence of a firearm, I attempted to get control of the male's left hand. I did this by placing my left hand onto he male's left wrist. I attempted to guide the male's hand behind his back and to place him into standard handcuffing position. Officer Cruse, likewise, attempted to gain control of the male's right wrist. During my attempt to get the male into the standard handcuffing position, I instructed the male to lay down onto the ground. I could then feel the male shift his body weight and then began to spin away from both Officer Cruse and me. I keyed my radio and stated "10/39" which means I needed back officers to respond to my location with lights and sirens. This series of events took only a few seconds. The male evaded our efforts to gain control of his hands and began to run to the west of our location.

After taking a few steps, the male made a turning movement with his body and looked over his left shoulder directly at me. At the same time the male placed his left hand onto his left front shorts pocket where I had observed the firearm. Based on my observations, I believed the male was trying to determine where Officer Cruse and I were standing so he could accurately shoot at us. I believed that the male was going to kill both of us.

Fearing for my life and for Officer Cruse, I drew my TPD issued firearm, raised it up and placed the muzzle towards the male. I pulled the trigger five (5) times. Officer Cruse also fired at the male. After firing, I noticed the male, who had continued moving towards the west, was still standing. I gave the male verbal commands to get onto the ground. The male took a half step to the north. The male then paused and dropped to his knees and then placed his face onto the ground. The male then pushed himself forward ultimately lying on his stomach. From the angle I was to him, I could not clearly see the male's left hand. Officer Cruse asked me if I

L17072183 Report 32/Lead 30

could keep cover of the male. Office Cruse went to his patrol car to obtain medical equipment. While still covering the male with my firearm, civilians from the apartment complex in the area started to come outside towards my location.

I radioed to dispatch, "Shots fired, shots fired." Dispatched then toned us out as Signal 13, meaning officer in danger and gave us the radio. I then immediately asked for fire and AMR to respond to our location after being toned. At one point, dispatched advised that Officer Cruse and I were at 2nd and Lime. I corrected dispatch that shots were fired and we were in the intersection of 3rd and Lawrence.

Office Cruse ran towards the male with emergency equipment. I too ran to the male after holstering my firearm. Officer Cruse gave me a pair of black plastic gloves that I put on in anticipation of administering first aid to the male who had been wounded by our gunfire. I informed Officer Cruse again about the firearm in the male's left front pocket. Officer Cruse then removed a black semi-automatic handgun and a magazine from the male's left front pocket.

At this point there were multiple civilians on scene who were becoming hostile. I decided to place the firearm Officer Cruse removed from the male's left front pocket into the trunk of my patrol car, car #18. While running to my patrol car, I noticed the firearm had a magazine inside of it. I placed the firearm next to the fire extinguisher. I shut the trunk and ran back to Officer Cruse. Once I returned, Officer Cruse and I attempted to render first aid to the male. Multiple officers responded to our location and relieved Officer Cruse and I from first aid duties. Shortly thereafter, Lt. Perry ordered Officer Cruse and I to go with him. Once inside his patrol car I turned off my Axon camera.

It should be noted that the bulk of the foregoing incident was captured on my Axon camera and Officer Cruse's Axon camera. Those recordings would speak for themselves as to the precise timing of events and words spoken by Officer Cruse, the male and I. Furthermore, the radio traffic recordings and dispatch log should reflect the precise radio traffic and timing of events.

Nothing further at this time.



