IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

KELLY WHITE,

          Plaintiff,

vs.                                                                  Case No. 18-CV-4050-DDC-JPO

CITY OF TOPEKA, ET AL.,

          Defendants.

# MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION PURSUANT TO F.R.CIV.P. 56(d)

Defendants Cruse and Mackey oppose plaintiff's motion to defer resolution of their motion for summary judgment based on qualified immunity and to permit discovery pursuant to F.R.Civ.P. 56(d). Plaintiff fails to bear his burden of demonstrating how discovery will raise a genuine issue of fact to defeat defendants' qualified immunity.

## ISSUE PRESENTED

The issue presented is whether plaintiff has demonstrated specific discovery that will raise a genuine issue as to any fact that would defeat defendants' qualified immunity.

## LEGAL STANDARD UNDER F.R.CIV.P. 56(d)

Once a qualified immunity defense is raised, discovery generally should be avoided. The district court's discretion in determining whether to allow discovery following a Rule 56(d) affidavit "must be limited when a summary judgment motion is based on qualified immunity because insubstantial lawsuits 'against government officials [should] be resolved *prior to discovery and on summary judgment* if possible.'" *Jones v. City and County of Denver, Colo*.,

854 F.2d 1206, 1211 (10th Cir.1988) quoting *Anderson v. Creighton*, 483 U.S. 635, 640 n. 2, 107 S.Ct. 3034, 3039 n. 2 (1987) (referencing Rule 56(f), pre-2010 forerunner of current 56(d)).

Under limited circumstances "narrow discovery" is permissible when "the plaintiff bears the burden of demonstrating 'how discovery will raise a genuine fact issue as to defendant's qualified immunity claim.'" *Cole v. Ruidoso Municipal School*, 43 F.3d 1373, 1387 (10th Cir. 1994). *See also Martin v. County of Santa Fe*, 626 Fed. Appx. 736, 740 (10th Cir. 2015).

The Tenth Circuit has addressed whether to permit limited discovery for purposes of responding to a motion for qualified immunity in several cases under the forerunner to Rule 56(d). *See e.g., Trask v. Franco*, 446 F.3d 1036, 1041-42 (10th Cir. 2006) (affirming district court's denial of Rule 56(f) motion where affidavits failed to establish "probable facts not available," nor stated with specificity how the additional material would rebut a qualified immunity motion); *Workman v. Jordan*, 958 F.2d 332, 336 (10th Cir. 1992) (if discovery is allowed to respond to a qualified immunity motion, it "must be tailored specifically to the question of [defendant's] qualified immunity"); *Lewis v. City of Fort Collins*, 903 F.2d 752, 758 (10th Cir. 1990) (in response to a qualified immunity summary judgment motion, "a plaintiff's 56[d] affidavit must demonstrate how discovery will enable them to rebut a defendant's showing of objective reasonableness or, stated alternatively, demonstrate a connection between the information you would seek in discovery and the validity of the defendant's qualified immunity assertion").

*Anderson v. Creighton*, 483 U.S. 635 (1987), cited by plaintiff, did not involve an incident captured by video. The *Anderson* court noted that on remand, the court should first determine whether "the actions the Creightons allege Anderson to have taken are actions that a reasonable officer could have believed lawful. If they are, then Anderson is entitled to dismissal

prior to discovery." 483 U.S. at 646, n. 6. If not, then discovery "tailored specifically to the question" of qualified immunity would be permitted. *Id.* Here, the incident is captured on video. Consistent with the requirement of *Scott v. Harris*, 550 U.S. 372, 127 S. Ct. 1769 (2007) to ignore allegations contradicted by video, the question posed in *Creighton* should be updated. The issue is whether the actions of the officers demonstrated by the indisputable video "are actions a reasonable officer could have believed lawful." Discovery is unnecessary. Similarly, *Workman v. Jordan*, 958 F.2d 332 (10th Cir. 1992) did not involve an incident captured on video. Indeed, the court in *Workman* emphasized the importance of the district court resolving the threshold question of qualified immunity before discovery and permitting discovery "tailored specifically to the immunity question" only if the challenged actions were "not those that a reasonable person could have believed were lawful." *Workman, supra* at 336.

Other courts have rejected Rule 56(d) motions when video of the incident was available. In *AM on behalf of F.M. v. Labarge*, 2012 WL 130670072 (D.N.M. December 7, 2012), the court denied a Rule 56(d) motion to take a defendant officer's deposition and pursue other discovery because plaintiff had not demonstrated that "discovery requested [was] necessary to enable Plaintiff to rebut a showing of objective reasonableness or demonstrate a connection between the information sought and the validity of the [defendant's] qualified immunity defense," noting that the parties had already agreed to produce the defendant officers lapel camera video, providing sufficient opportunity for plaintiff to rebut the defense. *Id.* at *5. Similarly, in *Shipman v. Carrasco*, No. 1:15-CV-167-BRB-KBM, 2016 WL 10100732, at *3 (D.N.M. July 19, 2016), the court denied a Rule 56(d) motion when dashcam video of the incident was available in order to "heed the directive to decide qualified immunity at the 'earliest

possible stage of litigation,' and, if appropriate, to allow [the officer] 'to avoid the burdens of such pretrial matters as discovery.'"

A decision to deny a Rule 56(d) discovery request is reviewed for abuse of discretion. *Ellis v. J.R.'s Country Stores, Inc.*, 779 F.3d 1184, 1192 (10th Cir. 2015); *Martin*, *supra* at 740.

## ARGUMENT AND AUTHORITIES

Plaintiff requests the court to allow them to depose defendants Cruse and Mackey and "other eyewitnesses," to submit written discovery to the City to obtain the "entire file concerning the City's investigation of this shooting" and to depose Detective M.T. Brown and to obtain an expert report analyzing the video. (ECF 39, p. 11-12).

Plaintiff's motion fails to meet the requirement of showing that the requested discovery "will raise a genuine fact issue as to the defendants' qualified immunity claim." *Martin v. City of Santa Fe*, *supra* at 740 (10th Cir. 2015).

### 1.   *Depositions of Officers and Eyewitnesses*

Plaintiff asserts that he needs the testimony of the defendants to gather evidence "about the threat White posed, the actions of defendants Cruse and Mackey, the physical conditions of the scene, and defendants Cruse and Mackey's own conduct during the police response." (ECF 39, p. 12). The body camera video resolves each of those topics. Additionally, plaintiff is not precluded from visiting the location of the incident to confirm and document the physical condition and nature of the location.

Plaintiff contends he needs the sworn testimony of the officers to establish facts similar to *Zia Trust Co. v. Montoya*, 597 F.3d 1150 (10th Cir. 2010), *Zuchel v. Spinharney*, 890 F.2d 273 (10th Cir. 1989) and *Walker v. City of Orem*, 451 F.3d 1139 (10th Cir. 2006). (ECF 39, p. 12). These cases offer no support for plaintiff's claims. None of the involved incidents were captured

on video. *Zuchel* and *Walker* involved suspects with knives. In *Walker*, officers testified they perceived Walker to have a gun but other evidence contradicted their perceptions. In both *Walker* and *Zuchel*, evidence supported that the suspects were at a distance from the officers and making no threatening motions. In *Walker*, the suspect was holding a knife to his own wrist. In *Zuchel*, evidence suggested the suspect was not advancing and was trying to explain "what was going on." *Zia Trust* involved an unarmed driver shot by an officer when the vehicle lurched forward a foot. The court concluded a jury could find the officer acted unreasonably because the officer had not identified himself, the suspect may not have known that the officer was a police officer because of darkness, the officer could not see whether the tires were directed toward him, and the officer was 15 feet from the vehicle which was "obviously stuck on a retaining wall," creating a question whether the officer had "probable cause to believe that there was a threat of serious physical harm to himself or others." *Zia Trust*, 597 F.3d at 1154.

The circumstances of these three cases are far from analogous to the situation confronted by Officers Cruse and Mackey. As shown by the body cam videos, the encounter with White occurred in daylight. White plainly recognized that Cruse and Mackey were police officers. They arrived in marked patrol cars and were in uniform. White was hailed by loud speaker from the car. Cruse had even pulled and then holstered his gun when White reached for the suspicious bulge at his back. No dispute exists that officers not only believed that White had a gun, he in fact had a gun. Mackey announced that White had a gun in his pocket. The officers had probable cause to believe that White had recently fired the gun. They were responding to a report of shots fired in the park and he was the only person in the park other than his girlfriend, whom Officer Cruse had already determined to be unarmed. White's denial that he had a gun

and assertion that the shots came from blocks away was not credible once officers learned that he did have a gun.

Plaintiff's purported need to inquire into the state of mind of the officers is without merit. The standard for review of an officer's use of force is an objective, not subjective standard. There is no dispute regarding the statements and warnings by Cruse and Mackey, which is recorded on the video. Once the gun was seen and announced, White not only "warned" by instructions to "stop" resisting and to get on the ground, Officers Cruse and Mackey attempted to manually restrain him. Whether a warning is given before the shooting is insignificant. The officers did not have time to warn White after he broke free, ran and reached for the gun his pocket. See *Walker v. City of Orem*, 451 F.3d at 1160 (finding insufficient time for commands in the less than 12 seconds from the time the encounter began until the shots were fired). Further, the video confirms that White knew of the officers' concern with his accessing a gun as a result of Cruse's reaction when White reached for the suspicious bulge and the fact that the officers attempted to restrain him when they learned that he did have a gun.

Even if these cases were factually similar, it is questionable whether their rejection of qualified immunity would survive review today when no factually-similar case was identified which had previously held such conduct to be unlawful. The Circuit's general statement of the Fourth Amendment right to be free from excessive force in those cases fails to meet the specificity requirements of *White v. Pauly*, ____ U.S. ____, 137 S.Ct. 548, 552 (2017).

While the Rule 56(d) affidavit of plaintiff's counsel includes general assertions about the criteria for evaluating an officer's use of force, it offers limited challenges of any specific fact addressed in defendants' motion. Paragraph 8 suggests plaintiff requires the depositions of Cruse and Mackey on the "factual unfolding of the White shooting incident" to "ascertain their

perception and interpretation of the movements White was making at the time he was shot." Such depositions are unnecessary for two reasons. First, the video adequately records both the audio and visual perspective of the officers. Only two verbal responses of White are inaudible. Although inaudible, the context of his comment is clear from the officer's responses and both precede the discovery by the officers of the gun in White's pocket. The responses are immaterial to the subsequent use of force. Second, because the reasonableness of the use of force is to be determined based on a reasonable officer standard, the subjective interpretations of Officers Cruse and Mackey are not material to the issue raised by defendants' motion.

Paragraph 10 of the affidavit requests discovery to determine whether the officers' "reckless or deliberate conduct during the seizure unreasonably created the need to use force." *Jiron v. City of Lakewood*, 392 F.3d 410, 415 (10th Cir. 2004). The continued validity of this rule is questionable after *County of Los Angeles, Calif. v. Mendez*, 137 S.Ct. 1539 (May 30, 2017). The U.S. Supreme Court rejected the "provocation rule" which had been created by the Ninth Circuit. Under the Ninth Circuit's invention, an officer was liable for excessive force if the officer recklessly or intentionally committed a separate constitutional violation, such as a warrantless entry to a building, which created the need to use force even if the force was reasonable at the precise time used. The Supreme Court rejected this "unwarranted and illogical expansion of Graham" as "incompatible with our excessive force jurisprudence." *Id.* at 1547-1548. Rather, "[e]xcessive force claims ... are evaluated for objective reasonableness based upon the information the officers had when the conduct occurred." *Id.* citing *Saucier v. Katz*, 533 U.S. 194, 207, 121 S.Ct. 2151 (2001).

*Mendez* implicitly rejects Tenth Circuit precedent that permitts excessive force claims to be based on officers' actions before the use of force if the officer's "own reckless or deliberate

conduct during the seizure unreasonably created the need to use such force." Even under that rule, the conduct of the officers before a suspect threatens force is relevant only if it is "immediately connected" to the threat of force. *Medina v. Cram*, 252 F.3d 1124, 1132 (10th Cir. 2001). Discovery is not necessary when the officers' conduct "immediately connected" to the incident is displayed in a video recording with audio. That evidence demonstrates the frivolous character of any allegation of reckless conduct creating the need to use force.

Paragraph 11.a. questions the officers' declaration that they were familiar with the area having a high number of reported gunshots and gang activity. Although that knowledge provides context, the use of force is justified by White's own actions as demonstrated on the indisputable video. Discovery into the accuracy of the officers' perception of the character of the area is not justified.

Paragraph 11.b. questions support for the declaration that White was probably the person who had fired the gun resulting in the report that shots had been fired in the park. It is self-evident that the report, the presence of only two people in the park, the absence of any indication that the other person was armed, White's possession of a gun and the suspicious actions of White demonstrated by the video support probable cause to believe that White was the individual who had fired the gun. Discovery is not justified.

Paragraph 11.c. questions the statement that no cover was available to the officers because Cruse noted he drove his patrol vehicle through the park so that he had cover. This question ignores the fact that Cruse was no longer in his car when White was found with the gun and spun away, running and reaching for his gun. Regardless, officers are not required to retreat or seek cover. *See Medina,* 252 F.3d at 1132 (rejecting contention that officers' failure to remain under cover created the need to use force).

Depositions of these officers in contravention of the policies behind qualified immunity is not supported when the standard for review of their actions is one of objective reasonableness.

### 2. *The City's Investigation File*

Plaintiff received initial disclosures under F.R.Civ.P. 26(a) on November 16, 2018. The city produced the Topeka Police Department Professional Standards case report, the training files of Officers Cruse and Mackey, Detective Brown's report, the determination on the shooting by the U.S. Department of Justice, the analysis of the Shawnee County District Attorney, interviews of Cruse and Mackey, reports of other Topeka police officers and county deputies, the body cam video of Officers Cruse and Mackey, the report and audio of the emergency communications center (i.e. "dispatch"), interviews of five other witnesses, and KBI lab reports. (Exhibit A, Defendants' Rule 26 Disclosures).

Plaintiffs fail to identify any other investigation necessary to respond to any Statement of Fact in defendants' motion for summary judgment.

### 3. *Deposition of Detective Brown and Plaintiff's Expert*

Plaintiff has been in possession of the body camera video and report of Detective Brown since at least November 2018. His motion identifies no impediment to his having already secured a second review of the video by a qualified expert.

Regardless, Detective Brown's analysis only assists in identifying information derived from the video that is subject to confirmation by independent evaluation of the video by the court. Detective Brown's report is cited as support for only three of the statements of fact in defendants' motion, statements 26, 28 and 29. Those statements are also supported by citation to specific points on the videos. The citations to Detective Brown's report can be disregarded

without affecting the substance of defendants' motion. No discovery related to the report of Detective Brown is justified.

## **CONCLUSION**

Plaintiff has not sustained his burden of establishing the necessity of discovery before responding to defendants' motion.

> Respectfully submitted,
>
> /s/ J. Steven Pigg
> J. Steven Pigg                    #09213
> David R. Cooper                   #16690
> FISHER, PATTERSON, SAYLER & SMITH, L.L.P.
> 3550 S.W. 5th St.
> Topeka, KS  66606
> (785) 232-7761 / (785) 232-6604 – fax
> E-mail:  spigg@fisherpatterson.com
>          dcooper@fisherpatterson.com
> **Attorneys for Defendants**
> **Michael Cruse and Justin Mackey**

## CERTIFICATE OF SERVICE

I hereby certify that on February 8, 2019, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system which will send a notice of electronic filing to the following:

Rick E. Bailey
CONLEE, SCHMIDT & EMERSON, LLP
200 W. Douglas, Suite 300
Wichita, KS 67202
rbailey@fcse.net
**Attorney for Plaintiff**

Andrew M. Stroth
Carlton Odim
ACTION INJURY LAW GROUP, LLC
191 North Wacker Drive
Chicago, IL 60606
astroth@actioninjurylawgroup.com
carlton@actioninjurylawgroup.com
*Pro Hac Vice* **Attorneys for Plaintiff**

Mary R. (Shelly) Starr
Chief of Litigation
Nicholas H. Jefferson
Assistant City Attorney
CITY OF TOPEKA
Legal Department
215 S.E. 7th St., Room 353
Topeka, KS 66603
sstarr@topeka.org
njefferson@topeka.org
**Attorneys for Defendant City of Topeka**

I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to the following non-CM/ECF participants: No one.

/s/ J. Steven Pigg
J. Steven Pigg