IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

KELLY WHITE, Individually, as Administrator of the Estate of Dominique T. White, deceased, and as Next Friend of minor grandchildren TUW, JSW, JKW, and NCW,

      Plaintiff,

v.

CITY OF TOPEKA, MICHAEL CRUSE, JUSTIN MACKEY, and JOHN DOE OFFICERS #1-5,

      Defendants.

Case No. 18-4050-DDC-JPO

## MEMORANDUM AND ORDER

This case involves a police shooting that caused Dominique T. White's death. Before the court is plaintiff Kelly White's "Motion to Delay Litigation of Defendants' Motion for Summary Judgment in Order to Conduct Additional Discovery Pursuant to Fed. R. Civ. P. 56(d)" (Doc. 30). Plaintiff filed the motion after defendants Michael Cruse and Justin Mackey raised a qualified immunity defense that they supported with two videos, their own declarations, and an investigation report of the shooting incident. The court concludes the videos alone do not establish, for purposes of summary judgment, that Mr. White reached for a gun before the shooting. Instead, the court would need to rely on Officers Cruse and Mackey's declarations for this factual proposition. The court thus grants, in part, plaintiff's motion, permitting plaintiff 120 days to depose Officers Cruse and Mackey and 60 days to produce an expert report.

I.    **Factual Background**

The court derives the following facts from the Complaint and the videos and declarations submitted with Officers Cruse and Mackey's motion. The court recites these facts for the limited purpose of resolving plaintiff's "Motion to Delay Litigation of Defendants' Motion for Summary Judgment in Order to Conduct Additional Discovery Pursuant to Fed. R. Civ. P. 56(d)" (Doc. 30). It does not adopt these facts as the ones governing the pending summary judgment motion.

On September 28, 2017, Officers Cruse and Mackey responded to a dispatch call of shots fired near Ripley Park in Topeka, Kansas. Officers Cruse and Mackey saw Mr. White and his girlfriend in Ripley Park. Mr. White and his girlfriend separated, and started walking away from each other. Officer Cruse interacted with Mr. White's girlfriend while Officer Mackey pursued Mr. White. Mr. White initially ignored Officer Mackey's request to ask him a question but yielded once Officer Cruse also approached. In response to questioning, Mr. White indicated that he had heard shots coming from a few blocks away. After this response, Officers Cruse and Mackey moved slightly away from Mr. White, as if the interaction might conclude. But, Officer Cruse observed that Mr. White was bent over at the waist and breathing heavily. Officer Cruse asked Mr. White whether he needed medical attention. Officer Mackey moved closer to Mr. White, circling around behind Mr. White and then to his left.

Officer Mackey observed a gun in the left pocket of Mr. White's shorts. Officer Mackey alerted Officer Cruse about the gun and then ordered Mr. White to the ground. Mr. White did not obey this command, and Officer Cruse grabbed Mr. White's arm. Mr. White escaped Officer Cruse's grasp, spinning in a counterclockwise direction before running away from the two Officers. While running, Mr. White's left hand neared the left pocket of his shorts. Officers Cruse and Mackey assert that they saw Mr. White reaching for the gun in his pocket. Officers

2

Cruse and Mackey opened fire at Mr. White, shooting a total of eight shots at Mr. White's back. Approximately four or five seconds elapsed between Mr. White breaking free of Officer Cruse's grasp and the final shot. Three of the shots struck Mr. White, resulting in his death.

## II. Procedural Background

Plaintiff Kelly White initiated this action by filing a two-count Complaint. Doc. 1. Against Officers Cruse and Mackey, the Complaint raises an excessive force claim under 42 U.S.C. § 1983 based on alleged violations of Mr. White's Fourth and Fourteenth Amendments. *Id.* at 4–5 (Compl. ¶¶ 26–29). Defendants answered the Complaint. Doc. 8. Also, Officers Cruse and Mackey moved to stay discovery, representing that they intended to move for summary judgment based on qualified immunity, explaining that the video evidence would resolve the case in their favor. Doc. 17. Specifically, Officers Cruse and Mackey represented "the video plainly shows [Mr.] White's left hand reached toward the gun in his left pocket as his right hand pinned his shirt out of the way." *Id.* at 5.

With the prospect that video evidence might resolve the forthcoming summary judgment motion, Magistrate Judge James P. O'Hara granted Officers Cruse and Mackey's Motion to Stay Discovery. Doc. 24. But, when he granted the motion, Magistrate Judge O'Hara noted the likelihood that plaintiff would file a Federal Rule of Civil Procedure 56(d) motion for limited discovery after Officers Cruse and Mackey moved for summary judgment. *Id.* at 2.

Officers Cruse and Mackey then moved for summary judgment based on qualified immunity, supporting the motion with two body-camera videos, their declarations, and an investigation report of the shooting incident. Doc. 26; Docs. 27-2, 27-3, 27-4, 27-5, 27-6; *see also* Doc. 29 (filing of CDs with video recordings). Detective M.T. Brown prepared the investigation report, a report that primarily consists of still shots taken from the videos. The

3

summary judgment motion advances the anticipated argument that Officers Cruse and Mackey were entitled to qualified immunity because (1) as a matter of fact, Mr. White, after breaking free of Officer Cruse's grasp, reached for the gun in his pocket; and (2) an objectively reasonable officer permissibly may use lethal force when confronted with an armed suspect who has disobeyed a lawful order and attempted to reach for a gun. Doc. 27 at 13–23.

In response, plaintiff moves for limited discovery, arguing that, under Rule 56(d), he is entitled to depose eyewitnesses to the shooting, including Officers Cruse and Mackey, before responding to summary judgment. Doc. 30. Plaintiff also seeks (1) additional investigatory reports from the City of Topeka about the shooting; (2) to depose Detective Brown; and (3) time to proffer an expert report about police shootings and reaction times. *Id*. at 12. Attached to plaintiff's motion is an affidavit from plaintiff's counsel Rick E. Bailey. Doc. 30-1. It explains the probable facts plaintiff anticipates acquiring from the limited discovery. *Id*. Officers Cruse and Mackey maintain that the video evidence provides a sufficient basis to resolve their qualified immunity defense. Doc. 33 at 4–9. They also contend that plaintiff fails to identify what other investigatory reports are needed to respond to their motion for summary judgment, and that any citations to the investigatory report in support of their "Statement of Uncontroverted Facts" may be disregarded because statements of fact supported by citation to the report are also supported by citation to the videos. *Id.* at 9.

## III. Legal Standards

### A. Summary Judgment

Summary judgment is appropriate if the moving party demonstrates that "no genuine dispute [about] any material fact" exists and that it "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When applying this standard, the court views the evidence and draws

4

inferences in the light most favorable to the non-moving party. *Nahno-Lopez v. Houser*, 625 F.3d 1279, 1283 (10th Cir. 2010). An "issue of fact is 'material' 'if under the substantive law it is essential to the proper disposition of the claim' or defense." *Id.* (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)). And a disputed "issue of fact is 'genuine' 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party' on the issue." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). Under this rule from *Scott*, a defendant may, at the summary judgment stage, rely on video evidence of the incident underlying the action to overcome the plaintiff's contrary version of events. *See id.* at 381–85 (rejecting plaintiff's version of events and concluding video evidence of car chase demonstrated that plaintiff created a risk of serious physical injury to the public, justifying use of deadly force).

### B. Qualified Immunity and Rule 56(d) Discovery

A state official sued in his individual capacity for money damages is entitled to qualified immunity unless the plaintiff can show "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). A court should endeavor to resolve an assertion of qualified immunity "at the earliest possible stage in litigation." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam)). This is "[b]ecause qualified immunity is 'an immunity from suit rather than a mere defense to liability . . . .'" *Id.* at 231 (quoting *Mitchell v.*

*Forsyth*, 472 U.S. 511, 526 (1985)). And, qualified immunity "is meant to give government officials a right, not merely to avoid 'standing trial,' but also to avoid the burdens of 'such *pretrial* matters as discovery.'" *Behrens v. Pelletier*, 516 U.S. 299, 308 (1996) (quoting *Mitchell*, 472 U.S. at 526).

Where a government official asserts qualified immunity before the commencement or completion of discovery, "a non-moving party may request additional discovery by showing via affidavit or declaration that without discovery 'it cannot present facts essential to justify its opposition' to the motion." *Gutierrez v. Cobos*, 841 F.3d 895, 907–08 (10th Cir. 2016) (quoting Fed. R. Civ. P. 56(d)). A party seeking discovery under Rule 56(d) "must specify (1) the probable facts not available, (2) why those facts cannot be presented currently, (3) what steps have been taken to obtain these facts, and (4) how additional time will enable the party to obtain those facts and rebut the motion for summary judgment." *Id.* at 908 (brackets omitted) (quoting *Birch v. Polaris Indus., Inc.*, 812 F.3d 1238, 1249 (10th Cir. 2015)).

"Where the summary judgment motion is based on qualified immunity, the non-movant's Rule 56(d) affidavit must also 'demonstrate a connection between the information he would seek in discovery and the validity of the defendant's qualified immunity assertion.'" *Id.* (brackets omitted) (quoting *Lewis v. City of Ft. Collins*, 903 F.2d 752, 754 (10th Cir. 1990)). "Although an assertion of qualified immunity heightens the Rule 56(d) burden, 'limited discovery may sometimes be necessary before the district court can resolve a motion for summary judgment based on qualified immunity.'" *Gomez v. Martin*, 593 F. App'x 756, 760 (10th Cir. 2014) (quoting *Crawford-el v. Britton*, 523 U.S. 574, 593 n.14 (1998)); *see also Garrett v. Stratman*, 254 F.3d 946, 953 (10th Cir. 2001) ("[Q]ualified immunity does not shield government officials

from all discovery but only from discovery which is either avoidable or overly broad." (quoting *Maxey v. Fulton*, 890 F.2d 279, 282 (10th Cir. 1989))).

## C. Framework for Considering Excessive Force, Police Shooting Claims

Claims for excessive force are "subject to the reasonableness requirement of the Fourth Amendment," meaning that "the plaintiff must demonstrate the force used was objectively unreasonable." *Estate of Larsen ex rel. Sturdivan v. Murr*, 511 F.3d 1255, 1259 (10th Cir. 2008). "Deadly force is justified under the Fourth Amendment if a reasonable officer in [d]efendants' position would have had probable cause to believe that there was *a threat of serious physical harm to themselves* or to others." *Id.* at 1260 (quoting *Jiron v. City of Lakewood*, 392 F.3d 410, 415 (10th Cir. 2004)). An officer's reasonable, but mistaken belief that the suspect was likely to use force against the officer will render the use of force objectively reasonable as "[a] reasonable officer need not await the glint of steel before taking self-protective action." *Id.* (internal quotation marks omitted).

A court must assess the totality of the circumstances when conducting its objective reasonableness analysis, making sure to view the facts from an "'on-scene perspective'" rather than through "'the 20/20 vision of hindsight.'" *Id.* at 1259 (first quoting *Saucier v. Katz*, 533 U.S. 194, 205 (2001); then quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)). The "[a]nalysis of excessive-force claims is inherently fact-intensive, turning on a balance of factors rather than bright-line rules." *Estate of Ceballos v. Husk*, 919 F.3d 1204, 1226 (10th Cir. 2019). Factors the court should consider when determining if a suspect posed an immediate threat to the officers' safety "include (1) whether the officers ordered the suspect to drop his weapon, and the suspect's compliance with police commands; (2) whether any hostile motions were made with

7

the weapon towards the officers; (3) the distance separating the officers and the suspect; and (4) the manifest intentions of the suspect." *Larsen*, 511 F.3d at 1260.

IV.     **Analysis of Rule 56(d) Motion**

With these standards in mind, the court considers each of plaintiff's Rule 56(d) discovery requests.

   A.     **Depositions of Officers Cruse and Mackey**[1]

Plaintiff seeks to depose Officers Cruse and Mackey (1) "to ascertain their perception and interpretation of the movements [Mr.] White was making at the time he was shot, and the manifest intentions of Dominique White" and (2) to "seek[] information about the potential threat posed by [Mr.] White at the time of the shooting, the actions of the responding officers to the scene, and the physical conditions of the scene." Doc. 30-1 at 3–4 (Bailey Aff. ¶ 8). Officers Cruse and Mackey respond, arguing that one can glean all this information from the videos. The court, for the most part, disagrees with Officers Cruse and Mackey. Officers Cruse and Mackey focus their qualified immunity argument on their assertion that Mr. White reached for the gun in his left pocket. The court has viewed both videos multiple times and finds the videos equivocal, at best, on whether Mr. White reached for his gun.[2] On the video captured by Officer Cruse's body-camera, Mr. White's body initially moves out of the picture frame and, when it reenters the

---

[1] Plaintiff also requests to depose "other eyewitnesses to the shooting." Doc. 30-1 at 4 (Bailey Aff. ¶ 8). But, the affidavit in support of plaintiff's motion does not identify who these other eyewitnesses are or the facts to which these other alleged eyewitnesses are likely to testify. And, it is not apparent that "other eyewitnesses," who are not visible in the videos, had any view of Mr. White's hand motions in the second, or so, between him breaking free from Officer Cruse's grasp and Officers Cruse and Mackey discharging their weapons. Plaintiff has not satisfied his Rule 56(d) burden to depose these unidentified "other eyewitnesses."

[2] The court also viewed the still shots taken from the videos. The court questions whether it can rely on the still shots as Officers Cruse and Mackey could not have processed Mr. White's motions in a frame-by-frame manner. But, the court need not resolve this issue at this juncture because, even if it relied on the still shots, it would reach the same conclusion.

frame, Mr. White's hand motions are largely blocked by Officer Cruse's own hands and gun. As for Officer Mackey's video, one can see Mr. White's left hand passing by his left pocket. But, a reasonable jury could conclude that Mr. White momentarily lost his balance after spinning out of Officer Cruse's grasp, then moved his hand consistent with a running motion, but did not reach for his pocket.[3]

The videos thus do not establish a factual allegation central to the qualified immunity argument advanced by Officers Cruse and Mackey. Instead, to conclude that Mr. White reached for the gun in his left pocket, the court would have to rely on Officers Cruse and Mackey's declarations. Also, finding that Officers Cruse and Mackey reasonably believed Mr. White reached for his left pocket and posed a serious threat to their safety would depend on their observations and perceptions of Mr. White's movements. And, where a factual assertion material to resolving Officers Cruse and Mackey's arguments for summary judgment depends on declarations revealing defendants' observations and perceptions of events, plaintiff is entitled to depose Officers Cruse and Mackey before the court rules on the summary judgment motion.[4]

---

[3] Although Mr. White's body is fully visible on Officer Mackey's body camera video, the precise movements of Mr. White's left hand are somewhat obscured by shadows from trees located behind Officer Mackey.

[4] In reaching this conclusion the court finds that the stay on discovery prevented plaintiff from ascertaining facts from Officers Cruse and Mackey. Permitting plaintiff 120 days to depose Officers Cruse and Mackey will allow plaintiff to gather facts potentially capable of rebutting the summary judgment motion. The prior stay of discovery thus allows plaintiff to satisfy the second, third, and fourth requirements for limited discovery, as stated in *Gutierrez*.

The court also notes that Officers Cruse and Mackey argue that action is faster than reaction, justifying their decision to use deadly force before Mr. White removed his gun from his pocket. Their argument, however, is a double-edged sword of sorts. Given the extremely short period of time between Mr. White breaking free from Officer Cruse's grasp and Officers Cruse and Mackey discharging their weapons, the court is unable to determine from the video precisely when Officers Cruse and Mackey mentally decided to discharge their weapons—was it when Mr. White broke free or, instead, when they allegedly perceived Mr. White reach for the gun in his pocket? The conclusion that Officers Cruse and Mackey decided to discharge their weapons because they observed Mr. White reach for the gun in his pocket is also called into doubt by Officer Mackey's post-shooting statements, *i.e.*, that he discharged his weapon because Mr. White "had a gun on him" (not because Mr. White reached for the gun). *See* Mackey Video at 3:50–4:05. Evidence about when Officers Cruse and Mackey decided to discharge their weapons is material to the court's resolution of the summary judgment motion. This is particularly true because

### B. City of Topeka Files

Plaintiff requests that the City of Topeka produce two types of documents. First, plaintiff asks for documents revealing "the actual number of incidents of gunshots and 'gang congregation' relative to other neighborhoods in the City." Doc. 30-1 at 6 (Bailey Aff. ¶ 12). This request stems from statements in Officers Cruse and Mackey's declarations that Ripley Park is located in a high-crime area. But, assuming plaintiff could discover evidence creating a genuine dispute of fact about whether Ripley Park is in a high-crime area, plaintiff fails to establish how this potential dispute of fact is material to resolving the arguments for summary judgment presented by Officers Cruse and Mackey. Plaintiff's request for data about shootings and gang congregation in Topeka neighborhoods thus does not satisfy the requirements for Rule 56(d) discovery adopted by the Tenth Circuit. *See Guitierrez*, 841 F.3d at 908 ("Where the summary judgment motion is based on qualified immunity, the non-movant's Rule 56(d) affidavit must also 'demonstrate a connection between the information he would seek in discovery and the validity of the defendant's qualified immunity assertion.'" (brackets omitted) (quoting *Lewis*, 903 F.2d at 754)).

Second, plaintiff also requests information in the City of Topeka's shooting investigatory reports that may contradict statements in Officers Cruse and Mackey's declarations. The court grants this request in part. As indicated above, not every statement in Officers Cruse and Mackey's declarations is material to resolving the summary judgment motion. But, evidence in City of Topeka files about Officers Cruse and Mackey's observations and perceptions of Mr. White's actions and statements about their decisionmaking processes when discharging their

---

Officers Cruse and Mackey have not clearly argued that qualified immunity applies where a police officer uses deadly force against a suspect running away from officers if they know the suspect is armed.

weapons are material to resolving the summary judgment motion. The court thus permits plaintiff to request limited discovery from the City of Topeka pertaining only to evidence contradicting Officers Cruse and Mackey's statements about their observations and perceptions of Mr. White's actions and why and when they decided to discharge their weapons.

## C. Deposition of Detective Brown

Plaintiff seeks to depose Detective Brown, the author of the investigation report submitted in support of Officers Cruse and Mackey's summary judgment motion. The affidavit in support of plaintiff's Rule 56(d) motion fails to specify what facts plaintiff expects to acquire from the deposition. *See* Doc. 30-1 at 7 (Bailey Aff. ¶ 13) (the only paragraph of the "Probable Facts Not Available" section of the affidavit that discusses Detective Brown's investigatory report). This, alone, provides a basis for denying plaintiff's request. But, denial is also appropriate for two reasons: (1) the report is primarily comprised of still shots of the videos;[5] and (2) Officers Cruse and Mackey have agreed to withdraw their citations to the report in support of their "Statement of Uncontroverted Facts," Doc. 33 at 9.

## D. Proffering of an Expert

Plaintiff requests an opportunity to proffer an expert opinion about Officers Cruse and Mackey's decisionmaking processes when discharging their weapons. Doc. 30-1 at 7 (Bailey Aff. ¶ 13). Plaintiff posits that the approximately one second between Mr. White breaking free from Officer Cruse's grasp and Officers Cruse and Mackey firing shots, was insufficient for Officers Cruse and Mackey to observe Mr. White reaching for his left pocket and *then* discharge their weapons. *Id.* Instead, plaintiff suggests the short time period supports the conclusion that

---

[5] Some of the still shots in Detective Brown's investigatory report are accompanied by text describing actions allegedly depicted in the still shots. But, the text does not qualify as an expert opinion under Federal Rule of Evidence 702, and the court does not rely on the text where it can watch the videos and look at the still shots for itself.

11

Officers Cruse and Mackey committed to discharging their weapons the moment Mr. White broke free from Officer Cruse's grasp. *Id.*

As discussed *supra* at footnote 4, plaintiff may be able to establish a genuine issue of material fact about when Officers Cruse and Mackey decided to discharge their weapons relative to Mr. White's hand passing by the left pocket of his shorts. The court thus grants plaintiff the opportunity to produce an expert opinion.[6]

## V. Conclusion

The court grants in part and denies in part plaintiff's Rule 56(d) motion for limited discovery. Plaintiff shall be permitted 120 days to depose Officers Cruse and Mackey. The depositions are permitted for the limited purposes of determining Officers Cruse and Mackey's observations and perceptions of Mr. White's movements just prior to the shooting, as well as their decisionmaking processes in discharging their weapons. Plaintiff also may seek discovery from the City of Topeka regarding any statements by Officers Cruse and Mackey about their observations and perceptions of Mr. White's movements, as well as their decisionmaking processes in discharging their weapons. Finally, plaintiff has 60 days from the date of this Order to produce any expert report about Officers Cruse and Mackey's decisionmaking processes and reaction times in discharging their weapons. And, plaintiff must make any expert available for deposition by Officers Cruse and Mackey before the close of the 120-day, limited-discovery period.

---

[6] Officers Cruse and Mackey contend plaintiff could have developed an expert opinion before they filed their summary judgment motion. But, with discovery stayed, retaining an expert could have proved costly and fruitless. And, because the court has decided to give plaintiff 120 days to depose Officers Cruse and Mackey, allowing plaintiff to proffer an expert opinion will not delay resolution of Officers Cruse and Mackey's summary judgment motion. But, to assure that the expert evidence does not delay the court's ability to rule on the summary judgment motion, the court requires plaintiff to furnish Officers Cruse and Mackey a copy of any expert report within 60 days of this Order. This will give Officers Cruse and Mackey 60 days to depose plaintiff's expert before the 120-day, limited-discovery period elapses.

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiff's "Motion to Delay Litigation of Defendants' Motion for Summary Judgment in Order to Conduct Additional Discovery Pursuant to Fed. R. Civ. P. 56(d)" (Doc. 30) is granted in part and denied in part.

**IT IS FURTHER ORDERED BY THE COURT THAT** plaintiff has 120 days to depose Officers Cruse and Mackey and to request documents from the City of Topeka. Plaintiff has 60 days to produce an expert report.

**IT IS FURTHER ORDERED BY THE COURT THAT** action on Officers Cruse and Mackey's Motion for Summary Judgment (Doc. 26) is delayed until the conclusion of the 120-day, limited-discovery period.

**IT IS FURTHER ORDERED BY THE COURT THAT**, upon the close of the 120-day, limited-discovery period, Officers Cruse and Mackey shall have 14 days to supplement their Memorandum in Support of Motion for Summary Judgment (Doc. 27). And plaintiff shall have 21 days from the earlier of the expiration of the 14-day supplementation period or Officers Cruse and Mackey filing a supplement to respond to the Motion for Summary Judgment (Doc. 26).

**IT IS SO ORDERED.**

**Dated this 18th day of June, 2019, at Kansas City, Kansas.**

          **s/ Daniel D. Crabtree**
          **Daniel D. Crabtree**
          **United States District Judge**